Case number 16-5011 et al. Jihad Dhiab, detainee, Guantanamo Bay Naval Station, and Shakir Amir. As next friend is Jihad Dhiab v. Barack Hussein Obama, President of the United States et al., Appellants Hearst Corporation. Ms. Dorsey for Respondents, Appellants Cross-Appellees. Mr. Schultz, Intervenors, Appellees Cross-Appellants. Good afternoon. Good afternoon, Your Honors. May it please the Court, Kathryn Dorsey on behalf of Respondents Appellants. The District Court here ordered ten classified videos depicting the forced cell extraction and internal feedings of Mr. Dhiab in this case without any determination that those videos were not properly classified. The Court did so finding that it abridged intervenors' right to free speech under the First Amendment to deny them access to those classified videos. That was an error. It is well established that the First Amendment is not a Freedom of Information Act. It provides a qualified access, right of access to traditionally public, unclassified judicial records. Now, here the District Court relied on the Press-Enterprise case, which is an exception to that right of access, which If you would agree, that is an open question, is it not? Open question whether I mean, a number of circuits have disagreed with your statement. The State, I'm sorry, Your Honor, I'm not sure which statement you're referring to. Whether that Press-Enterprise doesn't apply? Whether the First Amendment right of access is limited, as you suggest? I think it's there of an Your Honor, I'm not sure what cases you're citing to, or referring to, because I think it's This Court has certainly indicated a number of times, Hutchins and others, that the First Amendment is a qualified right of access. That it is not a Freedom of Information Act. No question. I don't think on that point there is any question that is a qualified right of access, Your Honor. I said no question. Okay. Sorry, Your Honor. So, in this case here, the District Court relied on Press-Enterprise, which we don't think applies in this case. Press-Enterprise was a limitation on the judiciary's right to seal unclassified records, judicial records, that were presumptively public, because they were unclassified. That exception does not confer on the judiciary authority to unseal properly classified information. And, in fact, Press-Enterprise did not deal with classified information, and it did not address that separation of powers problem that adheres in this case, where there's a First Amendment right and also the executive's prerogative to determine who gets access to classified information. As a practical matter, is there much daylight between the test for proper classification and the Press-Enterprise test? Yes, Your Honor, there is. The proper classification standard that has traditionally been applied in the FOIA context and also in pre-publication review cases like McGehee, typically affords substantial weight to the executive's declarations or assessments about why something is classified. And the Press-Enterprise test requires a compelling interest and a substantial probability of harm. So it's a much more demanding standard than has typically been applied to just review whether something is properly classified. Well, it doesn't depend on the exact meaning of substantial probability. I mean, I guess above all that. Well, Your Honor, I guess what I would retort on is the way the district court applied Press-Enterprise here certainly was a different standard because the district court concluded that the fact of classification was irrelevant to Press-Enterprise and also stated that the FOIA standard for proper classification was too lenient. And so it's clear that the district court here certainly applied a higher standard determining a substantial probability of harm. The district court did not review to determine whether the information was properly classified and said that was irrelevant. So I think there is a distinction here between those two. And in this case, we don't think the First Amendment is an appropriate vehicle even to seek access to classified information. That the interveners here could have filed a FOIA request to get access to the videos. That would have been the proper way to challenge whether the videos were properly classified. But that here there is no First Amendment right of access to these kind of classified videos and no case has recognized that Press-Enterprise applies to classified videos in order disclosure over the government's objection. Even if this court were determined that Press-Enterprise is applicable, which again we don't think it is, the result here would be the same in that there's still no First Amendment right of access. We think it's clear under the experience and logic test of Press-Enterprise that there is no history of a right of access to the classified information in Guantanamo habeas proceedings. I have to say I find that test totally mysterious. How could there be a history if Guantanamo only started to be used relatively recently for detention of prisoners? The Guantanamo habeas cases have been going on for 10 years now, Your Honor, and in the context of those proceedings it's certainly clear that there has not routinely been an access to classified information in those proceedings. This court has recognized... Has there been a request and a denial that sort of gelled into some sort of precedent? I'm not sure how it could gel into a precedent without judicial review. Well, there have been a number of challenges in the context of these Guantanamo cases where the government has sought to keep under seal unclassified information and the court has made it clear, this court has made it clear that that is this court's responsibility and the government would need to submit information that would justify such protections. But it has not applied the same standard to classified information. When you talk about history and tradition, and you mentioned this, the habeas proceedings in Guantanamo are rather extraordinary and the Supreme Court went to great lengths in Boumediene to canvas the history of the Ritters that existed in 1789 in England and then came up with the decision that they came up with. And the only substantive or even procedural statement in the entire Supreme Court opinion is that the habeas review has to be, quote, meaningful, and that was it. So do you measure history and tradition in terms of access to documents in habeas with respect to the way that habeas was conducted in 1789 in England? Because if you do, there is history with respect to access to documents under the ancient writ, and that was unless you had a proprietary interest in the document, you didn't get access to it. And the English case standing for that, in fact, I can't remember, is cited in a Supreme Court opinion, which I haven't dredged up, but it's an old opinion. Well, I think that would support our position here, Your Honor, that even if you're looking back to the writ in 1786, that would suggest also there's no right of access to information in habeas proceedings, much less classified information. And Boumediene also, the other point that the Supreme Court recognized in Boumediene was that they expected that classified information and the national security interest involved there would adequately be protected in these habeas proceedings. So I think there's every indication that the Supreme Court certainly didn't expect that classified information filed in the habeas proceedings would all of a sudden be publicly available. While you're talking about classified, I've heard it said that it was not marked classified. No document is ever marked classified, right? It's either top secret, secret, or confidential, and then eyes only or whatever. What's the other one? Correct. For official use only or special access, yes. I mean, I've seen a lot of classified documents, but I've never seen one that says classified. Right. I mean, I think in terms of when we say marked classified, we mean either marked with the appropriate header of secret, confidential, or top secret, or special access. But just in terms of how we say it in where we've talked about the court has a role in a FOIA context to determine proper classification. Obviously, it's not just that the government then submits the document with the classification stamp on it. As I understand it, the defense attorneys who are representing individuals that are detained at Guantanamo have to go through a security clearance. Is that correct? That's correct, and they receive security clearance and are cleared to receive classified information. Were the interveners here? Did they get security clearance? No, they do not have a clearance. So one of the outcomes- The intervener's attorneys, I mean. Correct, Your Honor, and they do not have security clearances. So one of the outcomes of the district court's decision here is that if these tapes are released, classified information will be released to the public, to interveners, to the petitioner himself, theoretically, even though those individuals have not been granted a security clearance or determined that they should have access to classified information by the executive. The Supreme Court recognized in Egan that who gets access to classified information is a decision that's in the prerogative of the executive branch. So what do you say to the proposition that there was no objection by the government when the detainee counsel, to the motion by detainee counsel to file the videos as court records? Well, the government did object to the discovery, but the government did not object- They lost that when the district court denied that motion and granted it in part as the redaction. I'm talking about the motion to make these videos part of the court record. There was no objection by the government. And the reason the government didn't object is in pursuant to the expectation in Boumediene that classified information would be litigated in these cases, but that that information would only be given out to counsel who were cleared for, or granted a security clearance and cleared for access to classified information. But in fairness to the sophistication of government litigators, the district court had already made pretty clear that its approach was looking at this case somewhat differently and that it viewed the decision it had to make was not necessarily predetermined by the government's classification decision. So if there was ever fair notice that the nature of these documents might be changing, why wouldn't the government have interposed an objection? I disagree, Your Honor. Again, here it was- You disagree with what? I disagree that the government was on reasonable notice that these videos- It was a motion file. Yes, but there was a protective order that governed, that prevented the release of classified information in these cases. But the district court had already made clear it was going to make the decision. I don't think at that time, Your Honor, there was anything that was clear that the district court was not going- that it was going to be a decision the court was- Well, if the district court bought your first argument, it just would have ended the matter. Denied the motion for intervention is futile, basically. I think at the time when the government did not object to the filing of the videos after they were ordered discovered, the government had every reasonable expectation that the videos would only be provided to detainees' counsel and to the court. There was a protective order in place, and nobody else had a security clearance in the case. And under Egan and other established law, this court routinely protects- and the district court routinely protects classified information filed in court. So there was absolutely no expectation. So you're saying there was a reasonable reliance by the government, and that explains its failure to object. Absolutely. And the government was doing its part to give what information could be given to cleared counsel, as Boumediene directed these cases to proceed. The government has made a real effort in the Guantanamo cases to provide what information it can to cleared counsel. And consistent with that, the government did that, but it certainly had no expectation that these records could later be publicly disclosed. And certainly that's the case-you know, Guantanamo cases have been going on for 10 years, and there is a vast amount of classified information that has been filed, again, pursuant to protective orders in these cases, with the expectation that that information will only be shared with the court and cleared counsel. If this court has no other questions, I see that I'm out of time. We would ask the court to- Well, I guess I do have a couple of questions. You have an alternative argument. Yes. It says even under the district court's approach, you win. Yes, Your Honor. We think-two points. Even if you were to apply press enterprise under the-as we started to discuss, under the experience and logic test, we don't think there would be a First Amendment right of access here.  Okay, the third. We think that the government's declarations here did show compelling interest to protect national security. The declarations, they're set forth for national security concerns. They explain in detail how the videos could be used by detainees to develop countermeasures. So on that third argument, our standard of review is abuse of discretion. I think that's correct. Well, yes, Your Honor. Although, again, we think that the legal question here about whether that would be de novo, whether that district court correctly applied the law- No, no. We're on the third option. Yes, I understand that. The third option is- The third option- Even assuming- Yes, even assuming- The district court properly preceded. Yes. Then I agree. I think it would be abuse of discretion, Your Honor. But here, as we explained in our briefs, we don't think the district court did not apply the substantial deference in looking at the harms which we think would be appropriate and to the executive's weighing of the harms and its concerns, because, again, the executive and the military officials who wrote these declarations are the ones with expertise to judge the seriousness of the concerns. And they relied on both the countermeasures, direct incitement of violence, the fact that more forced cell extractions might become necessary, and the concern that it might, if these videos were released, it might dilute the protections afforded to U.S. personnel- You haven't argued that the case is moot, have you? No. No. Not this case, no. And that, you know- How do you distinguish a situation where an intervener comes in and there's a discovery that is pending, but the case gets settled, the actual case? The discovery request is still outstanding. Does that discovery request not moot? I guess it would depend. It might be one of also these situations where it's capable of repetition and occurring, so the question might be one that might prevent mootness. The capable of repetition thing only applies to capable of repetition between the same parties with the same issue. So I don't think that would apply. How do you distinguish that situation? That's essentially what we have here. Well, but it's- I'm entitled to discovery. The only difference is I'm entitled to discovery because it's First Amendment. But if the case is moot, then they still have a remedy. It's under the Freedom of Information Act. Well, certainly, Your Honor, we agree that their remedy is under the Freedom of Information Act. The case that I've mentioned is Nixon v. Warner Communications, 1978, citing an 1829 English decision, habeas, I think. Okay. If the Court has no further questions, we would ask this Court to reverse the disclosure order. Thank you. All right. Interveners? Good afternoon, Judge. David Schultz for the Interveners, who are news organizations who are seeking to assert the public right of access to evidence admitted into the record in a civil proceeding. I say at the outset that there's a great deal that the government argues in its position that the Interveners have no quarrel with. We do not disagree that national security and protecting national security is a compelling interest. We do not disagree that a court should give substantial deference to the executive's determination of national security. But the government in this case is asking this Court to do what no other court has ever done. It's asking this Court to accept the premise that the executive and the executive alone can determine when court records are sealed and when court proceedings will be closed. That would be a fundamental change. The government asks a whole series of things that could be done as alternatives, and one of them, I take it, is that it's proper for us to consider whether or not the classification was proper. Right? So there's not a presence of the government that does not resolve the case standing alone. Sure. Because I understand that. Exactly. So I really do think that the fundamental dispute probably between the Interveners and the government is what the proper standard is, because just to back up, our position is that what the district court did here was apply well-settled precedent, that there is a First Amendment right of access to this proceeding. Who owns that First Amendment right? I'm sorry? Who owns that First Amendment right? The public owns the First Amendment right, and it's enforceable. So that means that in any habeas proceeding from Guantanamo, anyone in the United States can intervene in that proceeding to get classified information. Well, it's not just the press. It's everybody. I believe that the Supreme Court was very clear in Richmond newspapers. If you look at the Richmond newspapers case and the Gannett case, which was decided the year before, they said under the Sixth Amendment there is no public right of access. That's a personal right to the defendant. And under Richmond newspapers they said there is a public right, and it's an enforceable, affirmative right. It was a watershed case. It was the first time the Supreme Court said that the public could come in and enforce this right of access. And that's one of the fundamental mistakes, misconceptions in the government's position. When they quote this language saying the First Amendment is not a Freedom of Information Act, we don't dispute that. Those cases deal with access to information in the hands of the government, and the Supreme Court has never said that the public can come in and compel the executive branch to turn over information in its possessions. Things are fundamentally different when information is brought to a court where there is a constitutional right. It goes back centuries. You know, Jeremy Bentham in the 18th century said It doesn't go back in habeas corpus. Correct. In habeas corpus, at least according to Nixon v. Warner Communications, the only party, person, who could come in and get access to documents is someone who had a proprietary interest in those documents. What do you do with that? Well, there are a couple of things I'd say. I think you may be over-reading that a bit because in Ex Parte Mulligan, an 1866 habeas case, the court is very clear that the records were available on a public record. So I'm not sure the history is all that clear. It may be, but I'm talking about the writ as it existed in 1789. And I would submit that that's not the proper way to look at the First Amendment right of access, and I think the reason we know that is from Press Enterprise 2. In that case, the Supreme Court had the question before it of does this right of access that we've now said applies to trials because they've been conducted publicly forever and it serves the function, does it apply to criminal trials, does it apply to pretrial proceedings? And the court had a problem there because there was no centuries of access to pretrial proceedings. Most of the proceedings that were issued in that case were things that developed in the last 20 or 30 years because of rulings by the Supreme Court about procedural rights that criminals have. And what the court said there is we don't need this whole history because we can look at the experience. Every state that has adopted these pretrial proceedings has done them openly. To borrow from the last case, the Supreme Court said that the pretrial proceedings in a criminal case were the functional equivalent of a criminal trial, right? Sure. And what we're talking about here is a civil proceeding. We're talking about evidence admitted into the record of a civil proceeding. Now, it's quite right that the Supreme Court has only addressed this in the criminal context. Every circuit that has addressed this issue has said the same right applies in the civil context, and indeed the Supreme Court went out of its way in Richmond to make clear that they didn't see a distinction between civil and criminal. We had a case today where part of the record was sealed, as it is here. That means that anybody can come in and demand that this is my First Amendment right. I want to see all the sealed stuff. There certainly is that potential. I do agree, Judge, that there are certain standing requirements that courts have imposed. Clearly, the press has standing, and there might be circumstances where there would be a standing issue. Do you really have a unique harm? I don't think that's an issue in this case. If you take FOIA as an analogy, everybody has standing. Sure, and I think that's probably a good analogy. I mean, it would depend on a fact-specific question, but it is a public right. It's a substantially different right than FOIA. FOIA is a statutory right, and you only have the right to what Congress said you can get. And what Congress said in this area is you can only get things that are not properly classified. So that's, to go back to Judge Williams' question, that's the standard in a FOIA case. That's a different question. You're talking about standing. Everybody has standing under FOIA. Yes, I agree. You don't have to show that I need this document or that it's going to help me or anything. I just want the document. I agree. I was moving back to Judge Williams' question. I mean, if something is a right of the public. I'm sorry, Judge, I have a little trouble hearing you. If something is a right in the public, as you point out, the Supreme Court said of this right, then it's hard to see how there's any more standing requirement than to be a member of the public. I perhaps shouldn't have gone down that rat hole. It's not an issue in this case. There is no question of standing. The government hasn't raised it. It has been discussed in some of the court cases, but there's no issue here. And it is, in fact, a public right. So I want to just go back. It does raise a question of the hazards of a broad reading. I'm sorry, Judge, I didn't hear you. It raises a question about the hazards of a broad reading of Press Enterprise. Well, I think Press Enterprise is very clear in what the reading is, what the holding of that case is. The very specific holding of that case, which is very relevant here, was that a state statute in California that said a pretrial proceeding could be closed on a reasonable likelihood that open proceedings would violate the defendant's fair trial rights or jeopardize the fair trial rights failed to satisfy the First Amendment standard. That was the specific holding. It said reasonable likelihood is not sufficiently protective of the constitutional access right because of the importance of that right, the criticality of public access to courts. Florida has a statute that protects the identity of a rape victim in a criminal case. In fact, it protects the identity of a rape victim in a criminal case. And there's a Supreme Court case where just by negligence the police in the press room laid a piece of paper down and some cub reporter got it and published the name of a rape victim. That's neither here nor there. But under your theory, then, if there's a rape case and the Florida law is applied to protect the identity of the victim, the press or any individual can come in and force that identity to be disclosed to the public. Absolutely not. That is absolutely not our position, Judge. Our position is that the First Amendment right of access applies. It's a qualified right. There is a standard that has to be met. The standard is there at compelling interest. What the government fundamentally misunderstands. The identity of the rape victim is a compelling interest, but the national security is not? No, national security is very often. We do not disagree with that proposition. We need to understand it's very important that the proper standards get applied because what the government is arguing for here is to take classified information and say, well, we're not going to apply the First Amendment here. It just doesn't make sense in terms of the rights that the Supreme Court has said the public has. You know, there are things that can be sealed. A corporation's trade secrets can be sealed in a court record. The identity of an undercover police informer can be sealed. There are compelling interests to do that. But what the Supreme Court has said is because there is this constitutional access right, a judge must decide on a case-by-case basis if the interest exists. So in a trade secret case, if they say we need this sealed, a judge has to say, well, is this really a trade secret or is it already public? If it's already public, I'm not going to seal it. All that Judge Kessler did in this case was apply that same standard to the government's claim that something needed to be kept secret because it was national security. It's what exact – sorry. Let me just pursue that in a moment. In a hypothetical, if Program A is classified by the government and in this type of proceeding that occurred here, there is evidence that Program A has in fact been made available by the government to the public. The classification may have occurred in year one. It is now year 20. And I'm thinking of the Reynolds case as sort of an analogy here where time passes and the government's interest may change. That's one scenario. The other scenario is Program A is classified, Program A has been released to the public, but the government's position is that Program A still should remain classified. I need to understand what your understanding is of what is the standard a district court is to apply in that circumstance, assuming for purposes of this hypothetical that we're in the third alternative presented by the government's brief. Or something that's still classified. The standard to be applied, we would submit, is the press enterprise standard. It raises the same question. The standard is, has the government shown that there is a compelling interest that requires secrecy? That's the standard. It's a standard, but what I'm trying to get at is this whole notion of egan, this whole notion of national security, this whole notion of expertise. Absolutely. And what the district court did here, which we think is entirely appropriate, is the district court said, number one, national security, of course, can be a compelling interest. I need to apply the First Amendment standard, not whether it's properly classified, but the First Amendment compelling interest standard, and I must give proper deference to the executive. Well, how do we do that? We know how you do that because this court has said how that gets done in the FOIA context. It says that when the government is making national security assessments, the level of deference is built into the standard by saying all that a judge may properly ask for is, has the government given us a logical and plausible basis to believe that it's properly classified? So what Judge Kessler did is said, has the government given me a logical and plausible basis to believe there is a compelling threat to national security? And she said, based on everything that's secret, that's public, all that's been known, videos that are available on the Internet, they haven't shown me any grounds to meet the First Amendment standard. Now, I can think of a number of responses to the point I'm about to ask you, but in the correctional context, the Supreme Court and the lower courts have deferred very heavily to the opinion of the correctional official as to what is likely to cause a problem. All right? And, I mean, the Supreme Court, I think Chief Justice Rehnquist's writing, we're just not going to look at this. These people are responsible for maintaining the discipline, the conduct within the facility. And so why doesn't that approach apply in this context? I understand this is national security, so there's a much greater governmental interest and interest to all of us at stake. But I just want to understand that aspect of the case and why that isn't sort of relevant. I think it is relevant. And, in fact, Judge, I think that's completely consistent with what the district court judge did here. Of course you give deference to the statements of those experts. The question she asks is have they given me a logical and plausible reason. It's the same thing this court has done in other cases. I think it was a Campbell case under FOIA where they said, you know, this affidavit just doesn't cut it. It doesn't make any, it does not establish that something has been properly classified. Now, in Campbell, you sent it back and said you'd get another chance. But what the district court judge here did is said on the factual record it doesn't make sense. And I just want to, I want to go back to Judge Williams' questions because I really think this was at the heart of it. Why is it the First Amendment, the press enterprise standard, and not the properly classified? Shouldn't we just say is it properly classified and that's the end of it? And the answer to that is the standard for classification at the lowest level basically just says is there a reasonable expectation that some harm could happen? You know, it almost is. Serious damage. Damage to national security. But just some reasonable expectation of some sort of harm. It's almost an invitation to speculate. And what the First Amendment requires is more than that. That's what the teaching of Press Enterprise 2 was. I'm glad you raised this because the Press Enterprise 2 speaks of a requirement of specific findings. Sure. Demonstrating that there is a substantial probability that the interest in question will be prejudiced. Interest in question is my substitute for what was actually an issue there. So prejudiced itself is a variable term. It could be prejudiced extremely or prejudiced at the margin. And substantial probability is an elastic term. A substantial probability could mean more than 50%. It could mean less than 50%. And if the interest to be prejudiced is particularly valuable, you might expect that substantial probability might be at the lower end of probability. So I guess this is a question I first asked government counsel. Is there that big a gulf between the two standards? And I'd like your position on that. You're asserting that there is. You agree with her on that proposition. There needs to be a demonstration that's logical and plausible. It doesn't have to be one the district court agrees with. But there has to be a logical basis in the affidavits that are presented to believe that there is a substantial probability of harm. I like McGee. I mean, both McGee, Judge Wald's opinion of McGee. McGee made that same argument. I mean, it applied that test, although it applied it in the context of saying whether it was logical that it was properly classified. And it was different that that was the proper standard there because McGee had signed a contract agreeing that he wouldn't publish anything that was classified. So there was not a First Amendment question there. It was a classification question. The court went out of its way to find a First Amendment interest at stake and operating to affect its review of this issue. Isn't that true? There's a lot of talk in that case about the First Amendment. Sure. And there are First Amendment rights at stake because he wanted to speak. But I think that the ultimate standard that was applied, whether it's properly classified, was appropriate because of his contractual commitment to the CIA that he would not publish classified information. The issue presented to the court was are they saying stuff is classified that's not in a way that's censoring me. So the issue was have they properly classified this. It's a fundamentally different issue here, which is exactly the issue that was presented to the Fourth Circuit in Inouye, Washington Post. This is not an unprecedented ruling. This is the exact holding of Inouye, Washington Post, that in these circumstances where there's a claim of classification, the district court is obligated to apply the First Amendment standard. It was applied again in Pelton in the District of Maryland where the government wanted to play classified information only to the jury. And the press said, well, we're going to be watching this trial. We can't hear it. And the judge said, well, I'm going to let them hear it in the first instance and then we'll do a redacted transcript applying the First Amendment standard. It's the proper approach. I just note, too, that if the government were right, if all they had to show that something was properly classified in order to seal a transcript or close a proceeding, then Congress didn't need to do all that he did in SIPA in identifying what would happen in a criminal trial when classified information is there. SIPA was a very detailed look at this situation by Congress, and it has a number of sections that deal with pretrial disclosure, okay? But it has provisions that very specifically deal with what should a court do if a judge determines that classified information is material and necessary at a criminal trial. It says there are three options. The government can declassify it and we avoid the issue. It can be introduced without the government's objection, in which case it comes in even though it's classified. Or if the government objects, the government has an obligation to come up with an alternative or it gets sanctioned. It didn't say, well, if it's properly classified, we're just going to seal the proceeding. It recognized that there's a higher-  I'm sorry, Judge. is ranked above the press enterprise right. Well, I think they're both constitutional rights. The public's constitution- It covers a wide range. Yeah, yeah. I mean, we could go around on that, but, I mean, the importance of public access to trials cannot be overstated. It's what gives courts legitimacy in our country. To sacrifice that, to say any time there's classified information, we're going to have closed proceedings, without an independent determination by the judge that there is a need for closure. That's all the judge-counselor required. A low-level deferential showing by the government that secrecy was needed, and that's the minimum that should be required before we throw away this tradition of openness that is essential to the courts. That was the holding of the Fourth Circuit, as I said. But this court has recognized, too, that the classification standard isn't appropriate in circumstances. Way back in the 1970s, in the case called Halpern v. Kissinger that's cited in our brief, it dealt with different issues. It had to do with illegal wiretapping. But it said in passing, you know, we recognize as a court that we cannot automatically accept that the public disclosure of information that is marked top secret will necessarily or automatically cause problems to national security. Courts have a role, when information is brought to them, to make an independent determination that this constitutional right is overcome. And if I could just briefly turn, I know I'm over my time, but to the abuse of discretion. In our brief, we lay out all of the public information and all the reasons why the judge found that they hadn't logically shown. I just want to address briefly the heckler's veto, because I think, once again, the government, in advancing this potential for propaganda, is asking this court to open a door that the court has not gone down before, even in FOIA cases. Whatever the strength of that, it relates only to one of the interests that the government asserts. I'm sorry, I didn't hear you. I apologize. Whatever the strength of your point there, it relates to only one of the interests, the national security interests that the government speaks of. The propaganda? Right. Yes. But what they're asking you to do is to say, look, because of a generalized concern that people abroad might react adversely, we should deny the American people the right to see this information. There's a number of problems with that. One is it has no limiting principle. It's open-ended. It invites a ceiling of information, and, in fact, under the government's rationale, the more objectionable the government's conduct, the more outraged people are likely to be, the more likely it is to be secret. That can't be right. Even in the FOIA case, this court has not accepted that as a proper grounds to keep information out. It has specifically said that where First Amendment rights are at issue, we need to consider other things. But just think, this is not just a slippery slope. This is like the roller coaster slide clone. They're asking you to go down in terms of how it would change the way courts operate. Think about the civil litigation against the Los Angeles police arising out of the beating of Rodney King. Imagine a scenario where that videotape hadn't already been made public, and the court was presented with a request to seal because it could say to a high degree of probability that if you release that videotape, there would be riots in Los Angeles. Are we going to seal that? Are we going to go to secret proceedings on that type of a speculative harm? We don't allow that, and it shouldn't. The classification system is far different than that, and it's talking about national security, and it has a long pedigree. As a matter of fact, the first instance of the refusal to turn over documents was George Washington's refusal to give Congress the notes that led to the Jay Treaty, which started the executive privilege thing. I don't see that Rodney King has much of anything to do with that. My only point, Judge, is that if we're going to say, as the government argues, that information that could cause a harm outside of the courtroom is grounds to seal it, that's a very risky road to take. And think about the nature of the affidavits here, which I think that Judge Kessler-Praplick took into account, compared to the affidavits that this court had in front of it just recently in the ACLU case against the government involving the drones. They had affidavits that very specifically said, I looked at every single photograph that is a subject of this request. It made specific explanations about why the release of those photographs could cause harm, that it could reveal the type of technology we use for facial recognition, that it could allow people to determine the specific SEALs groups that were involved in these operations. And based on that kind of very specific concern, the court said under FOIA it couldn't be disclosed. The district court here applied that same approach and said that they're applying this very deferential standard that there was no logical basis presented in the materials submitted by the court why this. And if there ever was a case where the public should be entitled to see this sort of record evidence, it's here. This is a case involving the treatment in the judicial system of detainees being held at Guantanamo. And as Judge Kessler said, it is of utmost importance that the public understand that these proceedings are being done fairly. And Judge Kessler understood deference. She turned down the preliminary injunction. She deferred to the government and said this is not illegal. But then she turned around and said, but the American people have the right to know the basis on which this decision has been made, and they have the right to know what is happening here. This is a case where the decision is clearly appropriate. I think the government is concerned that they didn't meet the standard, and they're asking this court to throw out the standard because they didn't meet it, and that would be fundamentally improper. Thank you. Thank you. All right. Counsel for appellant? Judge Kessler here did not review the classification determination for whether it was logical and plausible. The decision made clear she was reviewing it for whether there was a substantial probability of harm, which requires more than the classified classification standard under the executive order, which requires a reasonable expectation of serious damage for secret items. I think in terms of the case that's more applicable here than Press Enterprise is the McGehee case that Judge Williams cited. And that's because that case specifically dealt with the separation of powers problem between the First Amendment and classified information. And in that case, the court still applied the determination of whether the information had been properly classified. And that was a case where the individual actually had the – it was a pre-publication review case where the individual actually had the information in their hands, so the court recognized that they had even greater First Amendment rights, but still recognized that given the executive's prerogatives to classify information, it should just be reviewed for proper classification. If Press Enterprise – Do they not have security clearances that they've never seen in videos? That's correct, Your Honor. If the Press Enterprise standard would apply, it would turn a lot of this Court's precedents on its head and just frankly not make a lot of sense. The public would have a right to – it would mean the public would have a right to access classified information that this Court has held up parties, that the government can rightfully withhold from parties to a case. For example – It's a legal matter. You'd have to file a motion to intervene, right, first of all. The court would have to grant it. Then you'd have to describe the nature of the interest. I mean, I don't see this necessarily the way you describe it in your brief. It's sort of an open sesame type situation. Well, I think, Your Honor, that those filing a motion to intervene and professing an interest in national security standards or what goes in like the terrorism designation cases, where this Court has held that classified information doesn't need to be shared with the parties to the case, but yet the public would – What I'm thinking of, when I read your brief or read the government's brief, I thought, well, this reminds me where we were with Guantanamo and the Department of Justice's position that there was no role for the court to play. And the Supreme Court had to say, no, there is a role for the court to play and set out what it was. And then we've had this dialogue between this court and the Supreme Court over the years in this area. And that's why I wanted to focus you on your third alternative, just understand what the concern is in that context. It's almost that you don't trust judges, not you personally, but you don't trust the judicial branch. And, of course, Congress has already decided that question by passing statutes that give jurisdiction to the courts to decide certain questions. So that's sort of water over the dam. And presumably the right of appeal, the right to seek stays, the right to challenge, et cetera, apparently in our three-branch system was viewed as circumstances where courts can effectively protect national security. And the notion that the courts are just going to open the floodgate, I mean, I don't think we have to decide that issue here, but I appreciate the questions about how broadly do you write. And so your first argument is the very broadest holding of this court. And that took me back to Hamdi, all right? That's where the government was on an Article I commander-in-chief argument initially as far as Guantanamo and the detainees. A lot of water over the dam, so we're much further down the road. So then I looked at the second argument to see, well, you're saying, you know, this is an open question. The Supreme Court has never decided whether press enterprise applies in this context, whether that's the right standard to apply, nor has this court. And then you say, but even so, even given all the mistakes we think that are here, we still prevail. And I thought, well, that's the narrowest holding, isn't it? Yes, Your Honor, that is. And I think it's clear from the declarations here that the government has laid out its national security concerns, and whether that's reviewed by this court for kind of a logical and plausible or properly classified information, the government here has met that standard and that video should not be disclosed. But even I think we've met even a substantial probability of harm, even if that were the standard to be applied. Just a few more points. Interveners raised SEPA. Of course, that only applies in the criminal proceedings. But even in SEPA, they acknowledge that you can't order the executive to disclose classified information. The government always has an out in that it has the choice of dismissing the case. And on the propagandist concern, the national security concern there, it's not just propaganda. It's the direct, that these videos can directly be used to incite violence. Is it that the government can dismiss the case, or the government can decide to proceed without the evidence? It has both choices, Your Honor. But it could, if it was the court's permission to dismiss. Anyway, move on. It may, Your Honor, but there's a choice there. Oh, no choice here is your point. Right, exactly, Your Honor. And the concern that these videos could be used to directly incite violence, this Court accepted that risk of harm in the judicial watch case, also the Second Circuit in the Center for Constitutional Rights case. So that is not a novel proposition, and it's certainly a concern that our troops would directly be in danger abroad is certainly a valid national security harm that the government can rely on. There are no further questions. Thank you. We'll take the case under advisement. Thank you.
judges: Rogers, Williams, Randolph